Kathleen Banar, Chief Trial Attorney
(IL Bar No. 6200597)
Margaret Aisenbrey, Trial Attorney
(Mo Bar No. 59560)
Kim Bruno, Trial Attorney
(District of Columbia Bar No.: 389899)
U.S. Commodity Futures Trading Commission
1155 21 St. NW
Washington, DC 20581
_kbanar@cftc.gov_ , _maisenbrey@cftc.gov,_
_kbruno@cftc.gov_
(202) 418-5335
(202) 418-5987 (facsimile)

Blaine T. Welsh (NV Bar No. 4790)
Assistant United States Attorney
United States Attorney's Office
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
_blaine.welsh@usdoj.gov_
(702) 388-6336
(702) 388-6787 (facsimile)

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 2:13-cv-00992-MMD-VCF** |
| **v.** ) | |
| ) | |
| **BANC DE BINARY LTD., E.T. BINARY OPTIONS LTD., BO SYSTEMS LTD., BDB SERVICES LTD., and OREN SHABAT LAURENT (a/k/a OREN SHABAT AND OREN COHEN)** . ) | |
| ) | |
| **Defendants.** ) | |

### CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS

## I.  INTRODUCTION

On May 6, 2014**,** Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed an *Amended Complaint For Injunctive And Other Equitable Relief And For Civil Monetary Penalties Under The Commodity Exchange Act And Commission Regulations* ("Amended Complaint") against Defendants Banc de Binary, Ltd. ("BdB Ltd."), E.T. Binary Options, Ltd. ("ETBO"), BO Systems, Ltd. ("BO Systems"), BDB Services, Ltd. ("BDB Services") (collectively, "Corporate Defendants") and Oren Laurent (a/k/a Oren Shabat and Oren Cohen) ("Laurent") (collectively, "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("CEA" or "Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2015) [DE # 52].  The Court entered a Consent Order for Preliminary Injunction against BdB Ltd. on July 18, 2013 [DE # 24].[1]

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Amended Complaint against Defendant**s** without a trial on the merits or any further judicial proceedings, Defendants:

1.      Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendants ("Consent Order");

2.      Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or

---

[1]      Defendants have also reached a proposed settlement in principle that would resolve the action *SEC v. Banc de Binary Ltd et al*., Case No. 2:13-cv-00993-RCJ-VCF ("SEC Action").  As part of a global settlement of both actions, the restitution obligations described herein, *infra*, Part V, Paragraphs 92-101, are intended to resolve the issue of restitution in both this action and the SEC Action.

any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledge service of the summons, original Complaint against BdB Ltd. ("Complaint") and Amended Complaint against BdB Ltd., ETBO, BO Systems, BDB Services and Laurent;

4.      Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to 7 U.S.C. § 13a-1 (2012);

5.      Admit the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to 7 U.S.C. §§ 1 *et seq.* (2012);

6.      Admit that venue properly lies with this Court pursuant to  7 U.S.C. § 13a-1(e) (2012);

7.      Waive**:**

(a)      Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, 17 C.F.R. §§ 148.1 *et seq.* (2015), relating to, or arising from, this action;

(b)      Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c)      Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)      Any and all rights of appeal from this action;

8.      Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendants, individually or collectively, now or in the future reside outside the jurisdiction of this Court;

9.      Agree that they will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10.      Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint, Amended Complaint, or the Findings of Fact and Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint, Amended Complaint and this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party.  Defendants shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

11.      By consenting to the entry of this Consent Order, Defendants neither admit nor deny the allegations of the Complaint, Amended Complaint, or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which they admit. Further, Defendants agree and intend that the allegations contained in the Complaint, Amended Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in

the course of: (a) any proceeding pursuant to 7 U.S.C. § 12a (2012), and/or 17 C.F.R. §§ 3.1 –

3.75 (2015); and/or (b) any proceeding to enforce the terms of this Consent Order.  Defendant

Laurent agrees and intends that the allegations contained in the Complaint, Amended Complaint

and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be

taken as true and correct and be given preclusive effect, without further proof in the course of

any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendant

Laurent.  Defendants do not consent to the use of this Consent Order, or the Findings of Fact and

Conclusions of Law in this Consent Order, as the sole basis for any other proceeding brought by

the Commission.

     12.     Agree to provide immediate notice to this Court and the CFTC by certified mail,

in the manner required by Paragraph 107 of Part VI of this Consent Order, of any bankruptcy

proceeding filed by, on behalf of, or against Defendants, individually or collectively, whether

inside or outside the United States;

     13.     Agree that no provision of this Consent Order shall in any way limit or impair the

ability of any other person or entity to seek any legal or equitable remedy against Defendants in

any other proceeding.

## III. FINDINGS AND CONCLUSIONS

     The Court, being fully advised in the premises, finds that there is good cause for the entry

of this Consent Order and that there is no just reason for delay.  The Court therefore directs the

entry of the following Findings of Fact, Conclusions of Law, permanent injunction, restitution,

civil monetary penalty and equitable relief pursuant to  7 U.S.C. § 13a-1 (2012), as set forth

herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.      FINDINGS OF FACT**

**1.      The Parties To This Consent Order**

14.      Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2015).

15.      Defendant **Banc de Binary Ltd.** has been incorporated in the Republic of Cyprus since February 2012, and is licensed as an investment firm with the Cyprus Securities and Exchange Commission ("CySEC").   BdB Ltd. operates under the trade name Banc de Binary. During the period from at least May 2011 through at least June 2013 ("Relevant Period"),[2] BdB Ltd. had offices at Kristelina Towers, 12 Arch Marakiou III, 3rd Floor Office 301, Mesa Yeitonia, Limassol, Cyprus.  BdB Ltd. has never been designated as a contract market by the Commission, is not an exempt board of trade, and is not a *bona fide* foreign board of trade pursuant to 7 U.S.C. §§ 6(a) & (b) (2012).

16.      Defendant **E.T. Binary Options Ltd.** has been incorporated in Israel since February 2010.  During the Relevant Period, ETBO operated under the trade name Banc de Binary and maintained a business address and operates out of an office in Israel located at 3 Ha Macabin Street Petach Tikva, Israel, 49220. As of 2010, it maintained a virtual office located at Trump Tower, 40 Wall Street, New York, New York.  ETBO has never been designated as a

---

[2] The phrase "During the Relevant Period" as used in this Consent Order means only at some time or time(s) within the period, and does not mean throughout the period, as certain of the Corporate Defendants were incorporated within the period.  Paragraphs 15-18 set forth the incorporation dates for each of the Corporate Defendants.

contract market by the Commission, is not an exempt board of trade, and is not a *bona fide* foreign board of trade pursuant to 7 U.S.C. §§ 6(a) & (b) (2012).

17.     Defendant **BO Systems Ltd.** has been incorporated in the Republic of Seychelles since February 2012.  BO Systems has operated under the trade name Banc de Binary.   During the Relevant Period, it maintained a business address at 106 Premier Building, Victoria, Meha, Seychelles.  BO Systems has never been designated as a contract market by the Commission, is not an exempt board of trade, and is not a *bona fide* foreign board of trade pursuant to 7 U.S.C. §§ 6(a) & (b) (2012).  In March 2013, BO Systems ceased to operate and transferred some or all of its operations to BDB Services.

18.     Defendant **BDB Services Ltd.** has been incorporated in the Republic of Seychelles since March 2013.  BDB Services has operated under the name Banc de Binary.  It maintains business addresses at 106 Premier Building, Victoria, Meha, Seychelles, and 1 Shoham Street, Ramat-Gan, Israel.  BDB Services has never been designated as a contract market by the Commission, is not an exempt board of trade, and is not a *bona fide* foreign board of trade pursuant to 7 U.S.C. §§ 6(a) & (b) (2012).

19.     Defendant **Oren Shabat Laurent**, also known as Oren Shabat and Oren Cohen, is a citizen of the United States and of Israel and presently resides in Israel.  Laurent was and is an owner, director and officer of BdB Ltd., ETBO, and BO Systems, and was an owner and director of BDB Services until at least August 2013.  At all times relevant, Laurent had actual or constructive knowledge of the factual allegations set forth in Paragraphs 20-48 below.

   **2.   <u>The Corporate Defendants</u>**

20.     All the conduct described herein was undertaken by Corporate Defendants' employees and agents, including, but not limited to, Laurent.

### a.     The Overlapping Businesses

21.     Laurent founded Banc de Binary in or about 2010.

22.     ETBO owns the trade name Banc de Binary, and has granted licenses to each of the Corporate Defendants to use that trade name.

23.     During the Relevant Period, a website operating under the trade name Banc de Binary held itself out as being headquartered at 40 Wall Street, New York, New York (the "Wall Street Office"), and as having offices at Kristelina Towers, 12 Arch Makariou III, 3rd Floor Office 301, Mesa Yeitonia, Limassol, Cyprus, among other places.

24.     Banc de Binary conducts a significant part of their business through its website located at www.bbinary.com.  In addition, Banc de Binary also maintains affiliated websites at www.bancdebinary.com and www.bbinary.net, among others.  Collectively, these websites comprise the Banc de Binary website ("Banc de Binary website" or "website").  Defendants did not differentiate between the companies on the Banc de Binary website, in Banc de Binary solicitation materials, or in communications with Banc de Binary customers, including U.S. customers.

25.     Throughout the Relevant Period, ETBO solicited and offered to trade with U.S. and foreign customers binary options through the Banc de Binary website and through e-mail and other communications and acted as the counterparty to those transactions.  In addition, ETBO entered into, confirmed the execution of, or maintained a position in, and solicited and accepted U.S. customer orders and funds offered through the Banc de Binary website, and through email and other communications, including from U.S. customers, who were not eligible contract participants ("ECPs").

8

26. During the Relevant Period, BO Systems solicited and offered to trade with U.S. customers binary options, including U.S. customers that were not ECPs, through the Banc de Binary website, and through e-mail and other communications and acted as the counterparty to those transactions. In addition, BO Systems entered into, confirmed the execution of or maintained a position in, and accepted U.S. customer orders and funds offered through the Banc de Binary trading website, and through e-mail and other communications, including U.S. customers that were not ECPs.

27. At least from June 2012 to March 2013,

- BdB Ltd. provided banking and clearing services to BO Systems and accepted funds from customers, including U.S. customers who were not ECPs, as BO System's financial agent, for the trading of binary options;

- BdB Ltd. and BO Systems had access to and used the same binary options trading platform to accept orders and execute binary option trades with customers, including U.S. customers; and

- ETBO provided BdB Ltd. and BO Systems marketing and customer support services in relation to the Banc de Binary trading platform.

28. In or about March 2013, Laurent created BDB Services. At or about the same time, BO Systems ceased its operations and transferred some or all of its operations to BDB Services.

29. Since March, 2013:

- BdB Ltd. provided banking and clearing services to BDB Services and accepted funds from customers, including U.S. customers who were not ECPs, as BDB Services' financial agent (from March 2013-August 2013), for the trading of binary options;

- BdB Ltd. and BDB Services had access to and used the same binary options trading platform to accept orders and execute binary option transactions with customers, including U.S; and

- ETBO provided BDB Services marketing and customer support services in relation to the Banc de Binary trading platform.

30.     The binary options trading platform utilized by the Corporate Defendants to place orders and execute binary options with U.S. and foreign customers, is the same trading platform used to place orders and execute binary options through the Banc de Binary website.

**b.      Common Ownership and Control**

31.     Laurent owns, manages and controls the Banc de Binary trade name that the Corporate Defendants use to conduct their binary options business.

32.     Laurent is the founder, president, CEO, a director and, along with his father, one of two equal beneficial owners of BdB Ltd.  From its inception to 2012, Laurent was the sole shareholder of ETBO, and since March 2013, he has been one of three owners of ETBO, the other two owners being Laurent's father and his brother.  Laurent is and has always been the sole director of ETBO.  He is a signatory on ETBO bank accounts.

33.     From its creation and during all relevant times, Laurent was the sole owner of BO Systems, and a director, officer or agent of the company.  He has executed contracts on BO Systems' behalf, including contracts with BdB Ltd. and ETBO.  During the Relevant period, Laurent, along with his father, was one of two equal beneficial owners and a director, officer or agent of BDB Services.  He has executed contracts on BDB Services' behalf, including contracts with BdB Ltd. and ETBO.

34.     Laurent holds himself out both commercially and to regulators as the person primarily responsible for Banc de Binary's business activities.  During the Relevant Period he has been actively involved in the management and general business of each of the Corporate Defendants.

10

35.     Laurent speaks on behalf of Banc de Binary to the news media and in numerous promotional videos on YouTube.  He also has been personally involved in responding to certain customer grievances.  Through the videos and other media appearances, Laurent promotes trading in binary option to U.S. customers and in this way was involved in soliciting U.S. customers to open accounts with Banc de Binary.

**3.      The Banc de Binary Website**

36.     The Banc de Binary website is an internet trading platform through which Banc de Binary solicits, accepts money from, and executes trades with U.S. customers to trade binary options.  Through the Banc de Binary website, customers buy or sell binary "call" or "put" options that allow them to predict whether the price of a certain "asset" will go "up" or "down" at a future date and/or time.

37.     During the Relevant Period, the Banc de Binary website offered for purchase to U.S. customers with Banc de Binary as the counterparty to the customers' transactions, binary options on dozens of "assets," including commodities (*e.g.*, wheat, oil, gold, platinum, sugar, coffee, corn, etc.), forex pairs (*e.g.*, EUR/USD, GBP/USD, USD/JPY, etc.), and stock indices (*e.g.*, S&P 500, NASDAQ futures, etc.).

38.     Once customers opened and funded accounts through the Banc de Binary website, customers executed trades by selecting a particular asset on the website and predicting if that asset's current price will go up or down on a date and time certain.  For example, customers who predicted that the price of oil will rise above the then-current price listed on the website on a specific future expiration date or time, execute a "Call Option" by clicking the "UP" button on the website.  Conversely, customers who predicted that the price of oil will fall below the then-current price listed on the website on a specific future expiration date or time, execute a "Put

11

Option" by clicking the "DOWN" button on the website.  The Banc de Binary website permitted customers to execute trades from between $1 to $8,000, and to pick the date and time of contract expiration.  The Banc de Binary website also lists, by "asset" or contract, the "Payout" or "return" should the predicted event occur.

39.     During the Relevant Period, U.S. customers opened trading accounts on the website, which they accessed in the U.S., and traded binary options.  The options traded included, but were not limited to, predictions about future price changes of, among other things, coffee, gold, the US dollar/Japanese Yen forex pair, the Euro/Japanese Yen forex pair, and the S&P 500 index.

40.     During the Relevant Period, U.S. customers initiated and executed these options trades on the Banc de Binary website through computer terminals located in the U.S.

41.     To fund their Banc de Binary trading accounts and make the trades, U.S. customers transferred funds from the U.S. to Banc de Binary by credit card, wire transfer, check or third party payment systems (*e.g.*, MoneyBookers E-wallet, Alertpay E-wallet, etc.) to foreign bank accounts maintained in the name of Banc de Binary or over which Banc de Binary had beneficial control and interest.

42.     Throughout the Relevant Period, the Corporate Defendants offered to, solicited, and accepted orders from, and executed trades with U.S. customers who are not ECPs.  U.S. users of the website were not required to submit any information about their net worth, or assets, or prior trading experience to open a trading account on the website, and the Corporate Defendants executed trades with U.S. customers, without inquiring into or confirming such customers' net worth, assets or prior trading history.

4.     **The Bonus Program**

43.     During the Relevant Period, in addition to the website, the Corporate Defendants also actively solicited U.S. customers located in the U.S. via telephone, e-mails, and other communications to participate in Banc de Binary's "bonus" programs.

44.     In their solicitations, Corporate Defendants and Banc de Binary claimed they would provide a certain "deposit match" amounting to a specified percentage of customer funds. For example, according to the website, if the company "offers you a 50% deposit match of up to $50,000, it means that if you open a new real trading account and make a first deposit of $1,200, Banc [d]e Binary will instantly fund your account with an additional $600 that will go straight to your trading balance allowing you to trade with $1800 instead of the $1,200 you initially deposited." The website claims that this bonus "gives you great value and extra trading leverage." The "terms and conditions" on the website note that, upon accepting the bonus, customers are prohibited from withdrawing funds from their trading account, including apparently their own funds initially invested, unless and until the customer trades at least 20 times the value of his or her trading account, or, in the example provided above, $36,000 (*i.e.*, $1,200 plus $600 multiplied by 20 = $36,000).

45.     Certain of the customers that traded binary options through the website signed up for the bonus program.

46.     The binary options executed by customers as part of the bonus program, including those executed by U.S. customers, were retail commodity transactions within the meaning of the CEA because they were leveraged or margined or financed by Banc de Binary and the Corporate Defendants.

### 5.     The Banc de Binary Business's Ongoing Activity

47.     On April 9, 2014, the CFTC filed a Motion for Order to Show Cause Why Defendant [Banc de Binary Ltd.] Should Not be Held in Contempt for Violation of Injunction ("Motion for Order to Show Cause") [DE #48], alleging violations of the Preliminary Injunction Order due to a transaction with a single U.S. customer.  The CFTC subsequently supplemented its Motion for Order to Show Cause on June 23, 2015 [DE #133], alleging additional transactions with U.S. customers that violated the Preliminary Injunction Order.  Defendants responded to both the Motion for Order to Show Cause [DE #56] and the Motion to Supplement [DE #141] and challenged the number of transactions at issue.  The CFTC filed replies to each, respectively. [DE #58, #144.]

48.     On August 11, 2015, the Court held a hearing on the CFTC's Motion for Order to Show Cause and found that Defendant Banc de Binary violated the terms of the Preliminary Injunction Order.  [DE #152].

## B.     CONCLUSIONS OF LAW

### 1.     Jurisdiction and Venue

49.     7 U.S.C. § 13a-1(a) (2012) authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

50.     The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to 7 U.S.C. §§ 2(c)(2) & 13a-1 (2012).

51.     Venue properly lies with the Court pursuant to 7 U.S.C. § 13a-l(e) (2012), because the acts or practices in violation of the CEA and the Regulations have occurred, are

occurring, or are about to occur within this District, among other places, and because one or more of the Defendants transact or transacted business in this District.

> **2.**     **The Corporate Defendants and Banc de Binary Operated as a Common Enterprise as a Matter of Law**

52.     "[E]ntities constitute a common enterprise when they exhibit either vertical or horizontal commonality – qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *FTC v. Network Services Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010).  The Ninth Circuit has looked to the following factors in determining whether companies have acted as a common enterprise: (1) whether the companies have pooled resources, staff, and funds; (2) whether they have common ownership and management; and (3) whether they have participated in a "shared business scheme" and "common revenue."  *Id.* at 1143; *F.T.C. v. Health Formulas, LLC*, No. 2:14-CV-01649-RFB, 2015 WL 2130504, at *6 (D. Nev. May 6, 2015).

53.     Under this test, ETBO, BO Systems and BDB Services operated as a common enterprise during the Relevant Period.  BdB Ltd. operated as part of the common enterprise during at least part of the Relevant Period.  Laurent and family members owned and controlled each corporate entity comprising the Banc de Binary enterprise; the corporate Defendants shared business addresses; the corporate entities' business activities were interrelated and entwined; and BdB Ltd. operated as both BO Systems' and BDB Services' financial agent, and provided them banking and clearing services during the Relevant Period.

54.     Thus, as a matter of law, BdB Ltd., ETBO, BO Systems and BDB Services operated as a common enterprise during the Relevant Period.

### 3.    The Binary Options Offered by Defendants are
### Commodity Options Under the CEA and CFTC Regulations

55.    The binary options offered by Banc de Binary are "commodity options" under the Act and Regulations: (1) they are "of the character of" or are "commonly known to the trade as" options; and (2) Banc de Binary holds them out to be options, puts and calls and promotes to the public that it is offering options.

56.    The binary options offered on the website to U.S. customers were not excepted or exempted from the Commission's ban on trading options off-exchange.

57.    None of the Corporate Defendants are or have ever been a DCM, EBOT or *bona fide* FBOT.

### 4.    Defendants BdB Ltd., ETBO, and BO Systems Violated
### 7 U.S.C. § 6c(b) and 17 C.F.R §§ 32.2 and 32.11 (2012),
### and Laurent Is Liable Under 7 U.S.C. 13c(b) (2012)

58.    7 U.S.C. § 6c(b) (2012), makes it unlawful to

> offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under the Act which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty", contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe.

59.    17 C.F.R. § 32.2 (2012) (repealed June 26, 2012), provides that, notwithstanding the requirements of 17 C.F.R. § 32.11 (2012) (repealed June 26, 2012), "no person may offer to enter into, confirm the execution of, or maintain a position in, any transaction" in any agricultural commodity, including the agricultural commodities identified in Paragraph 37 above, unless otherwise exempt under 17 C.F.R. § 32.13 (2012) (repealed June 26, 2012).

60.     17 C.F.R. § 32.11(a) & (b) (2012) (repealed June 26, 2012), provide, in relevant part, that "it shall be unlawful . . . for any person to solicit or accept orders for, or to accept money, securities or property in connection with, the purchase or sale of any commodity option, or to supervise any person or persons so engaged," unless the commodity option transaction is exempt under [17 C.F.R. §] 32.4, or is "conducted on or subject to the rules of a contract market or a foreign broad of trade in accordance with the provisions of [7 U.S.C. § 6(c)] and any rule, regulation or order promulgated thereunder."  17 C.F.R. § 32.11(a) & (b) (2012) (repealed June 26, 2012).

61.     During the period from May 2011 through June 25, 2012, BdB Ltd., ETBO and BO Systems violated 7 U.S.C. § 6c(b) (2012), and 17 C.F.R. §§ 32.2 and 32.11 (2012) (repealed June 26, 2012), by offering or entering into, confirming the execution of trades, maintaining a position in, and/or soliciting and accepting orders (and funds) from U.S. customers to trade, binary option contracts not excepted or exempted from the Commission's ban on trading options off-exchange, including with U.S. customers that are not ECPs.  None of these transactions occurred on a DCM, EBOT or *bona fide* FBOT.

62.     BdB Ltd., ETBO and BO Systems are not and have never been exempt from the requirements of 7 U.S.C. § 6c(b) (2012), pursuant to either 17 C.F.R. §§ 32.4(a) & (b) or 32.13 (2012) (repealed June 26, 2012).

63.     The acts of the agents and employees of BdB Ltd., ETBO and BO Systems undertaken on each of their behalves occurred within the scope of their employment.  Defendants BdB Ltd, ETBO and BO Systems are therefore liable for their agents' and employees' acts, omissions, or failures pursuant to 7 U.S.C. § 2(a)(1)(B) (2012), and 17 C.F.R. § 1.2 (2012).

64.     Laurent is liable under 7 U.S.C. § 13c(b) (2012), as a controlling person of BdB Ltd., ETBO, and BO Systems, for their violations of the Act and the Regulations because he controlled, directly or indirectly, BdB Ltd., ETBO, and BO Systems and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations.

**5.     Corporate Defendants Violated of 7 U.S.C. §§ 6c(b), and 2(e) (2012) and 17 C.F.R. § 32.2 (2013), and Laurent Is Liable Under 7 U.S.C. 13c(b) (2012)**

65.     On July 21, 2010, Congress amended the Act by enacting the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 7 U.S.C. § 1 *et seq.* (2012), which, among other things, expanded and clarified the CFTC's jurisdiction over swaps. As relevant here, Dodd-Frank defined an option as a swap, with the exception of options subject to 7 U.S.C. §§ 2(c)(2)(C) & 2(c)(2)(D) (2012).  Dodd-Frank became effective on July 16, 2011.

66.     7 U.S.C. § 1a(47)(i) (2012), defines a "swap" – unless otherwise excluded under 7 U.S.C. § 1a(47)(i)(B) (2012) – to include "any agreement, contract or transaction . . . that is a put, call, cap, floor, collar, or similar option of any kind that is for the purchase or sale, or based on the value, of 1 or more interest or other rates, currencies, commodities, securities, instruments of indebtedness, indices, quantitative measure, or other financial or economic interests or property of any kind."

67.     On June 26, 2012, Part 32 of the Regulations was repealed and a new Part 32, 17 C.F.R. Part 32 (2013) went into effect.  17 C.F.R. § 32.2 (2013), makes it unlawful for

> any person or group of persons to offer to enter into, enter into, confirm the execution of, maintain a position in, or otherwise conduct activity related to any transaction in interstate commerce that is a commodity option transaction, unless:   (a) Such transaction is conducted in compliance with and subject to the provisions of the Act, including any Commission rule, regulation, or order thereunder, otherwise applicable to any other swap . . . .

68.     7 U.S.C. § 2(e) (2012) makes it unlawful for

> any person, other than an eligible contract participant, to enter into a swap unless the swap is entered into on, or subject to the rules of, a board of trade designated as a contract market under section 5.

69.     During the period from October, 2012 through at least March 2013, the Corporate Defendants violated 7 U.S.C. §§ 6c(b) & 2(e) (2012), and 17 C.F.R. § 32.2 (2013), by offering to enter into and entering into binary option transactions with U.S. customers who were not ECPs, and confirming the execution of those binary options not excepted or exempted from the Commission's ban on trading options off-exchange, including with U.S. customers that are not ECPs.  None of these transactions occurred on a DCM, EBOT, or a *bona fide* FBOT.

70.     The Corporate Defendants are not and have never been exempt from the requirements of 7 U.S.C. §§ 6c(b) & 2(e) (2012), pursuant to 17 C.F.R. § 32.2 (2013).

71.     The acts of the agents and employees of the Corporate Defendants undertaken on each of their behalves occurred within the scope of their employment.  The Corporate Defendants are therefore liable for their agents' and employees' acts, omissions, or failures pursuant to 7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2013).

72.     Laurent is liable under 7 U.S.C. § 13c(b) (2012), as a controlling person of the Corporate Defendants for their violations of the Act and the Regulations because he controlled, directly or indirectly, the Corporate Defendants and knowingly induced, directly or indirectly, the acts constituting the violations.

**6.     Corporate Defendants Violated 7 U.S.C. § 6(a) (2012), and Laurent Is Liable Under 7 U.S.C. 13c(b) (2012)**

73.      U.S.C. § 2(c)(2)(D) (2012), provides:

> Except as provided in clause (ii) [not applicable here], this subparagraph shall apply to any agreement, contract, or transaction in any commodity that is – (I) entered into with, or offered to (even

if not entered into with), a person that is not an [ECP] or eligible commercial entity; and (II) entered into, or offered (even if not entered into), on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis.

74.     7 U.S.C. § 2(c)(2)(D)(iii) (2012), as relevant here, further provides that 7 U.S.C. §

6(a) (2012), applies to any agreement, contract, or transaction described in 7 U.S.C. §

2(c)(2)(D)(i) (2012), "as if the agreement, contract, or transaction" was a futures contract.

75.     7 U.S.C. § 6(a) (2012), as relevant here, makes it unlawful for any person

to offer to enter into, to enter into, to execute, to confirm the execution of, or to conduct any office or business anywhere in the United States, its territories, or possessions, for the purpose of soliciting, or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, a contract for the purchase or sale" a futures contract "(other than a contract which is made on or subject to the rules of a board of trade, exchange, or market located outside of the United States, its territories or possessions) unless –

(1) such transaction is conducted on or subject to the rules of a board of trade which has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity;

(2) such contract is executed or consummated by or through a contract market; and

(3) such contract is evidenced by a record . . . .

76.     During the period from July, 2011 through at least March 2013, the Corporate

Defendants violated 7 U.S.C. § 6(a) (2012), because 1) they were not designated or registered as

a contract market or derivatives transaction execution facility and its contracts were not executed

or consummated by or through a contract market; 2) offered to enter into, entered into, confirmed

the execution of, and conducted business in the U.S.; 3) for the purpose of soliciting or accepting

orders for; 4) off-exchange leveraged or margined retail commodity transactions; 5) with U.S.

customers; 6) who are not ECPs (*see* 7 U.S.C. § 1(a)(18) (2012); or 7) eligible commercial entities (*see* 7 U.S.C. § 1(a)(17) (2012).

77.     The Corporate Defendants are not and have never been exempt from the requirements of 7 U.S.C. § 6(a) (2012), pursuant to 7 U.S.C. § 6(c) (2012).

78.     The acts of the agents and employees of the Corporate Defendants, undertaken on each of their behalves occurred within the scope of their employment.  The Corporate Defendants are therefore liable for their agents' and employees' acts, omissions, or failures pursuant to 7 U.S.C. § 2(a)(1)(B) (2012), and 17 C.F.R. § 1.2 (2013).

79.     Laurent is liable under 7 U.S.C. § 13c(b) (2012), as a controlling person of the Corporate Defendants, for their violations of the Act and the Regulations because he controlled, directly or indirectly, the Corporate Defendants and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations.

**7.      Defendants BdB Ltd., ETBO, and BO Systems Violated of 7 U.S.C. §§ 6d(a), and 2(c)(2)(B)(iv)(I)(aa) (2012) and 17 C.F.R § 5.3(a)(4)(i)(B) (2015), and Laurent Is Liable Under 7 U.S.C. 13c(b) (2012)**

80.     7 U.S.C. § 6d(a) (2012), as relevant here, makes it unlawful for "any person to be a futures commission merchant unless – (1) such person shall have registered, under this Act, with the Commission as such futures commission merchant and such registration shall not have expired nor been suspended nor revoked . . . ."

81.     7 U.S.C. § 2(c)(2)(B)(iv)(I)(aa) (2012), as relevant here, states that an FCM cannot solicit or accept orders from non-ECPs in connection with agreements, contracts or transaction involving forex options.

82.     17 C.F.R. § 5.3(a)(4)(i)(B) (2015), requires that all FCMs who solicit or accept orders from any person that is not an ECP in connection with any retail forex transaction must be registered.

83.     During the period from July 16, 2011 through at least March 2013, BdB Ltd., ETBO, and BO Systems each operated as an FCM by (i) soliciting and accepting orders for the purchase or sale of swaps, retail forex transactions, retail commodity transactions, and/or commodity options, (ii) acting as a counterparty to retail commodity options transactions, and (iii) accepting money, securities, or property to margin, guarantee, or secure any trades or contracts that resulted therefrom.  BdB Ltd., ETBO, and BO Systems engaged in the transactions described in (i)-(iii) with non-ECPs.

84.     BdB Ltd., ETBO, and BO Systems have never been registered with the Commission as an FCM, or in any other capacity, and are not exempt from the requirements of 7 U.S.C. § 6d(a) (2012).

85.     Accordingly, BdB Ltd., ETBO, and BO Systems violated 7 U.S.C. §§ 6d(a) and 2(c)(2)(B)(iv)(I)(aa) (2012), and 17 C.F.R. § 5.3(a)(4)(i) (2015).

86.     The acts of agents and employees of BdB Ltd., ETBO, and BO Systems undertaken on each of their behalves occurred within the scope of their employment.  BdB Ltd., ETBO, and BO Systems are therefore liable for their agents' and employees' acts, omissions, or failures pursuant to 7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2013).

87.     Laurent is liable under 7 U.S.C. § 13c(b) (2012), as a controlling person of BdB Ltd., ETBO, and BO Systems for their violations of the Act and the Regulations because he controlled, directly or indirectly, BdB Ltd., ETBO, and BO Systems and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

88.     Based upon and in connection with the foregoing conduct, pursuant to 7 U.S.C.

§ 13a-1 (2012), Defendants and any other person or entity associated with any one of them, are

permanently enjoined from engaging in conduct in violation of 7 U.S.C. §§ 6c(b), 6(a), and 2(e)

(2012); and 17 C.F.R. § 32.2 (2015);

89.     BdB Ltd., ETBO, BO Systems, and Laurent, and any other person

or entity associated with any one of them, are permanently enjoined from

engaging in conduct in violation 7 U.S.C. §§ 6d(a) and 2(c)(2)(B)(iv)(I)(aa)

(2012), and 17 C.F.R. § 5.3(a)(6)(i) (2015);

90.     Defendants, and any of their agents, servants, employees, assigns, attorneys, and

persons in active concert or participation with any one of them, including any successor thereof,

are permanently enjoined from, while in violation of the Act or Regulations, including 7 U.S.C.

§§ 6c(b), 6(a), 6d(a), 2(e), and 2(c)(2)(B)(iv)(I)(aa) (2012), or 17 C.F.R. §§ 32.2 and

5.3(a)(4)(i)(B) (2015), directly or indirectly:

> i.      Entering into any transactions with any person located in
> the United States involving "commodity interests" (as that term is
> defined in 17 C.F.R. § 1.3(yy) (2015);
>
> ii.     Controlling or directing the trading for or on behalf of any
> other person or entity located in the United States, whether by
> power of attorney or otherwise, in any account involving
> commodity interests;
>
> iii.    Soliciting, offering, maintaining a positon in, confirming
> the execution of, or accepting any orders or funds from any person
> located in the United States for the purpose of purchasing or
> selling any commodity interests; and
>
> iv.     Operating the Banc de Binary website.

91.     Defendants, and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with any one of them, including any successor thereof, are permanently enjoined from directly or indirectly soliciting, offering, maintaining a position in, confirm the execution of, or accepting any orders or funds from any person located in the United States for the purpose of purchasing or selling any commodity interest as long as there is any amount due and owing by the Defendants under this Consent Order.

## V.  RESTITUTION, DISGORGEMENT AND CIVIL MONETARY PENALTY

### A.  RESTITUTION

92.     Defendants shall pay, jointly and severally, restitution in the amount of Seven Million, One Hundred Thousand U.S. Dollars ($7,100,000) ("Restitution Obligation") payable as follows:

     a.     $3.1 million shall be paid to the National Futures Association ("NFA"), a self-regulatory organization regulated by the CFTC, upon execution of and in accordance with this Consent Order and the Judgments and Consents to Final Judgments entered in the SEC Action against the Defendants; and

     b.     $4 Million ($4,000,000) is due and owing and is to be paid in separate $1 million increments to the NFA on or before the following dates:  February 28, 2016; September 30, 2016; February 28, 2017; and September 29, 2017, provided, however, that the Defendants may elect to pay, in full or in part, any one of the four scheduled payments for the $4,000,000.00 disgorgement award before the due dates set forth above; and

   c.  In the event that Defendants fail to make any payment toward the $4,000,000.00 disgorgement amount by the dates and/or in the amounts set forth above in Paragraph 92(b) on or before the date agreed and/or in the amount agreed according to the schedule set forth in Paragraph 92(b) above, all outstanding payments and monetary amounts under this Consent Order, minus any payments made, including post-judgment interest, shall become immediately due and owing at the discretion of CFTC staff without further application to or order from the Court.  Defendants will deliver proof of payment through a letter from its counsel, Ifrah PLLC, on firm letterhead indicating the date on which a wire was sent from Ifrah PLLC's Client Account to the NFA and the wire confirmation details.  Such a letter will be delivered on or before the date of payment, as specified herein.  Receipt of such a letter by the NFA will constitute timely payment.  To the extent Ifrah PLLC is no longer representing Defendants, Defendants acknowledges and agrees that a payment to the National Futures Association is only deemed received according to the records of the NFA showing a deposit into the "Banc de Binary – Restitution Fund. Post-judgment interest shall begin to accrue on the date of the first failure to make any payment as set forth in Paragraph 92(b) above, and shall accrue and be applied thereafter to all outstanding monetary amounts.

93.  Defendants acknowledge that they, in this action and the SEC Action, have placed $5,050,000.00 in escrow towards the Restitution Obligation, and agree that these funds will be released upon entry of this Consent Order and the Judgment entered in the SEC Action, and paid in accordance with this Consent Order and Judgments and Consents to Final Judgments entered in the SEC Action.

94.  Post-judgment interest shall accrue on the Restitution Obligation on any

delinquent amounts and shall be determined by using the Treasury Bill rate prevailing on the date of the delinquency pursuant to 28 U.S.C. § 1961 (2012).

95.     To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' customers the Court appoints the NFA as Monitor ("Monitor").  The Defendants shall pay the Restitution Obligation as set forth in Paragraphs 92-93 above, and the Monitor shall receive restitution payments from Defendants and make distributions as set forth in Paragraphs 96-101 below.  Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

96.     Defendants shall make Restitution Obligation payments under this Consent Order to the Monitor in the name "Banc de Binary—Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to a location specified by the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the payment and the name and docket number of this proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer and the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

97.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' customers identified by the CFTC and in the SEC Action in (a list of which is attached hereto as Exhibit A and incorporated by reference), or may defer distribution until such time as the

Monitor deems appropriate.  In the event the Monitor is unable to distribute all funds contained in the Banc-de-Binary Restitution Fund to the Defendants' customers identified on <u>Exhibit A</u>, the remaining funds will be transferred to the United States Treasury as civil monetary penalties.

98.     Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to ensure the accuracy of <u>Exhibit A</u> and provide contact information to locate Defendants' customers identified on <u>Exhibit A</u>.

99.     The Monitor shall provide the CFTC and Securities and Exchange Commission ("SEC") at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' customers during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer and Director of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 as well as to John W. Berry, Regional Trial Counsel, and Amy Jane Longo, and Leslie A. Hakala at the following address: Securities and Exchange Commission, Los Angeles Regional Office, 444 South Flower Street, Suite 900, Los Angeles, CA 90071, with a copy to A. Jeff Ifrah**,** Ifrah PLLC, 1627 I Street, NW, Washington, DC 20006, jeff@ifrahlaw.com.

100.     The amounts payable to each customer shall not limit the ability of any customer from proving in a separate action that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

101.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each of Defendants' customer who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of

any portion of the Restitution Obligation that has not been paid by Defendants to ensure continued compliance with any provision of this Consent Order and to hold Defendants in contempt for any violations of any provision of this Consent Order.

### B.   CIVIL MONETARY PENALTY

102.   Defendants shall pay, jointly and severally, a civil monetary penalty in the amount of Two Million U.S. Dollars ($2,000,000) ("CMP Obligation"), plus post-judgment interest.  The civil monetary penalty is due and owing on or before September 29, 2017, with post-judgment interest beginning to accrue on that date.  Post-judgment interest shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

103.   Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding.  Defendants

shall simultaneously transmit copies of the cover letter and the form of payment to the Chief

Financial Officer and the Director of Enforcement, Commodity Futures Trading Commission,

Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

## C.    PROVISIONS RELATED TO MONETARY RESTITUTION

104.    With respect to Defendants' Restitution Obligation under this Consent Order to

pay, jointly and severally, restitution in the amount of $7,100,000.00, Defendants knowingly,

intentionally and unconditionally:

a.    accept the Defendants' Restitution Obligation and consents unreservedly

to the enforcement thereof;

b.    forever waive, forfeit and surrender any and all rights, privileges, or

opportunities that they might otherwise have had to challenge, contest or dispute the

validity, the enforceability or the collectability of Defendants' Restitution Obligation in

any jurisdiction or before any tribunal whatsoever (including, but not limited to,

jurisdictions or tribunals within or outside the United States, such as jurisdictions and/or

tribunals where the Defendant is incorporated, conducts business or operations, maintains

assets, pays taxes, or has any connection whatsoever, including but not limited to, the

States of Israel, Cyprus, and Seychelles) (hereinafter, "any jurisdiction or tribunal");

c.    agree and acknowledge, and do not contest or dispute that the Court has

jurisdiction over the Defendants and has authority and jurisdiction to enter this Consent

Order against the Defendants;

d.    agree and acknowledge, and do not contest or dispute that Defendants are

subject to the Consent Order and were afforded the right to be heard and raise their

arguments before the Court;

e.       agree and acknowledge, and do not contest or dispute that the Consent Order is no longer appealable;

f.       agree and acknowledge, and do not contest or dispute that the Consent Order is executable in the United States and was rendered by a competent court according to the laws of the United States;

g.       agree and acknowledge, and do not contest or dispute that the Consent Order may be enforced in any foreign jurisdiction or tribunal in the same manner as a judgment delivered by a court of that foreign jurisdiction or tribunal;

h.       agree and acknowledge, and do not contest or dispute that the substance of the Consent Order is not contrary to public policy principles in the United States or in any other jurisdiction or tribunal;

i.       agree and acknowledge, and do not contest or dispute that the Consent Order has been made on merit and was not issued due to a procedural default or other procedural reason;

j.       agree and acknowledge, and do not contest or dispute that the Consent Order was not obtained by fraud or undue influence;

k.       agree and acknowledge, and do not contest or dispute that the Consent Order is not contradictory to any other judgment that is still valid and was issued in this action, the SEC action, or any other matter between the parties;

l.       agree and acknowledge and do not contest or dispute that except for the SEC action, there is no pending lawsuit or proceeding regarding the same matter of this action and between the same parties before any jurisdiction or tribunal;

m.       agree and acknowledge and do not contest or dispute that by entering into

this Consent Order, the Consent Order is *ipso facto* executory in a foreign jurisdiction and may be enforced in that jurisdiction in the same manner as a judgment delivered by the courts of that jurisdiction without this Consent Order and judgment being first declared to be executory by that court;

      n.      agree to cooperate with, and not to oppose, any effort by the CFTC, or any party acting on behalf of the CFTC, to collect payments due and owing under the Defendants' Restitution Obligations in any jurisdiction or tribunal;

      o.      consent to the entry of a confession of judgment, or conditional judgment, in the forms attached hereto as Exhibits B-D, in order to collect payments due and owing on Defendants' Restitution Obligation, and further agrees to and shall sign all forms attached hereto as Exhibits B-D and cooperate with any effort taken by the CFTC, or any party acting on its behalf, to enforce Defendant's payment obligations under the Consent Order in any jurisdiction or tribunal;

      p.      agree to pay all attorney fees and other costs incurred by the CFTC or SEC in any jurisdiction or tribunal to collect any delinquent payments due and owing under the Defendants' Restitution Obligation pursuant to the schedule set forth in Paragraphs 92-93 (and such fees and costs must be paid within 30 days of receiving written notice from the CFTC or SEC of such fees and costs);

      q.      agree that (a) service of any papers filed in any jurisdiction or tribunal by the CFTC or any party acting on behalf of the CFTC to collect payments due and owing under the Defendants' Restitution Obligation may be made by email and/or regular mail on A. Jeff Ifrah, Ifrah Law PLLC, 1717 Pennsylvania Avenue N.W., Suite 650, Washington, D.C. 20006; and (b) any service accomplished in the above-described

31

manner is sufficient and binding on the Defendants under the governing law of the applicable jurisdiction, and Defendants waive any right to dispute or challenge such service.

105.   Partial Satisfaction:  Acceptance by the Commission/CFTC or the Monitor of any partial payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver of their obligations to make further payments pursuant to this Consent Order, or a waiver of the Commission/CFTC's right to seek to compel payment of any remaining balance.

106.   Cooperation: Defendants shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, the SEC, any other governmental agency operating on either of their behalf in connection with this action or the SEC Action, and the NFA in this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto. As part of such cooperation, Defendants agree to:

- provide to the CFTC, SEC and NFA any additional data, e.g. CRM data, necessary to facilitate the payment of restitution, including but not limited to investors' addresses and phone numbers and other such intonation in the Defendants' possession; and

- concurrently with execution of this Consent Order, execute the confessions of judgment, lien and waiver forms identified in Paragraph 104(o) above, and agree in the future to execute such further forms that the CFTC or SEC may deem necessary to enforce this Consent Order as to Defendants' Restitution Obligations in any other jurisdiction, foreign or domestic.

## VI.  MISCELLANEOUS PROVISIONS

107.   Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to CFTC:
Rick Glaser, Deputy Director
U.S. Commodity Futures Trading Commission

1155 21 St. N.W.,
Washington, DC 20581
*rglaser@cftc.gov*
(202) 418-5358
(202) 418-5937 (facsimile)

Kathleen Banar, Chief Trial Attorney
U.S. Commodity Futures Trading Commission
1155 21 St. N.W.,
Washington, DC 20581
*kbanar@cftc.gov*
(202) 418-5335
(202) 418-5937 (facsimile)

Notice to Defendant**s**:
A. Jeff Ifrah
IFRAH PLLC
1717 Pennsylvania Avenue, Suite 650
Washington, D.C. 20006
Telephone: 202-524-4140
Facsimile: 202-521-4141
jeff@ifrahlaw.com

All such notices to the CFTC shall reference the name and docket number of this action.

108.     Change of Address/Phone:  Until such time as Defendants satisfy in full their

Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this

Consent Order, Defendants shall provide written notice to the Commission by certified mail of

any change to his telephone number and mailing address within ten (10) calendar days of the

change.

109.     Entire Agreement and Amendments:  This Consent Order incorporates all of the

terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to

amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing;

(b) signed by all parties hereto; and (c) approved by order of this Court.

110.     Invalidation:  If any provision of this Consent Order or if the application of any

provision or circumstance is held invalid, then the remainder of this Consent Order and the

application of the provision to any other person or circumstance shall not be affected by the holding.

111.     Waiver:  The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

112.     Waiver of Service, and Acknowledgement: Defendant(s) waive service of this Consent Order and agree(s) that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to the Defendant(s) of its terms and conditions.

113.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

114.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

115.     Authority:  BdB Ltd. hereby warrants that the undersigned Oren Shabat Laurent is a shareholder of BdB Ltd., that this Consent Order has been duly authorized by BdB Ltd, and that Oren Shabat Laurent has been duly empowered to sign and submit this Consent Order and

all exhibits hereto on behalf of BdB Ltd.  ETBO hereby warrants that the undersigned Oren

Shabat Laurent is a director and shareholder of ETBO, that this Consent Order has been duly

authorized by ETBO, and that Oren Shabat Laurent has been duly empowered to sign and submit

this Consent Order and all exhibits hereto on behalf of ETBO.  BO Systems hereby warrants:

that BO Systems, Ltd., by resolution of its Board of Directors, changed its name to Banc De

Binary Limited, Seychelles; that despite the name change, Banc De Binary Limited, Seychelles

is the one and the same company as Defendant BO Systems, Ltd., Seychelles, and maintains the

same company Registration No. in the Republic of Seychelles of 102922; that the undersigned

Oren Shabat Laurent is the ultimate beneficiary shareholder of Banc De Binary Limited,

Seychelles (formerly named and registered and registered in Seychelles as BO Systems); that this

Consent Order has been duly authorized by BO Systems (now named and registered as Banc De

Binary Limited, Seychelles); and that the undersigned  Oren Shabat Laurent has been duly

empowered to sign and submit this Consent Order and all exhibits hereto on behalf of BO

Systems  (now named and registered as Banc De Binary Limited, Seychelles), and that. Oren

Shabat Laurent has been lawfully appointed to sign the Consent Order on behalf of BO Systems

Ltd. (now named and registered as Banc De Binary Limited, Seychelles), according to the

resolution of the Board of Directors in its meeting on January 17, 2016 to approve the Consent

Order and to authorize Oren Shabat Laurent to sign it on its behalf.  BDB Services hereby

warrants that the undersigned Sandrine Marie Claudia Rassool is the sole director and

shareholder of BDB Services, that this Consent Order has been duly authorized by BDB

Services, and that Sandrine Marie Claudia Rassool has been duly empowered to sign and submit

this Consent Order and all exhibits hereto on behalf of BDB Services.

116.    Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

117.    Contempt:  Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

118.    Agreements and Undertakings:  Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order For Permanent Injunction, Civil Monetary Penalty And Other Equitable Relief Against Defendants* forthwith and without further notice.

**IT IS SO ORDERED** on this 26th day of ___February_____, **2016.**

Miranda M. Du
**UNITED STATES DISTRICT JUDGE**

CONSENTED TO AND APPROVED
BY:

ATTORNEYS FOR PLAINTIFF
U.S. COMMODITY FUTURES
TRADING COMMISSION

By: /s/ Margaret Aisenbrey

Kathleen Banar
(202) 418-5335
(202) 418-5987 facsimile
*kbanar@cftc.gov*
(Ill. Bar No. 6200597)

Margaret Aisenbrey
(816) 960-7749
(816) 960-7751 facsimile
*maisenbrey@cftc.gov*
(Mo. Bar No. 59560)

Kim G. Bruno
(202) 418-5368
(202) 418-5987 facsimile
*kbruno@cftc.gov*
(DC. Bar No.389899)

U.S. Commodity Futures Trading
Commission
1155 21st Street NW
Washington, D.C. 20581

Blaine T. Welsh (NV Bar No. 4790)
Assistant United States Attorney
United States Attorney's Office
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
*blaine.welsh@usdoj.gov*
(702) 388-6336
(702) 388-6787 (facsimile)

ATTORNEYS FOR DEFENDANTS
BANC DE BINARY LTD., ET
BINARY OPTIONS LTD., BO
SYSTEMS LTD., BDB SERVICES
LTD., AND OREN SHABAT
LAURENT (A/K/A OREN SHABAT
AND OREN COHEN)

By: /s/ A. Jeff Ifrah_____

A. Jeff Ifrah
*jeff@ifrahlaw.com*
Rachel Hirsch
*rhirsch@ifrahlaw.com*

IFRAH PLLC
1717 Pennsylvania Avenue
Suite 650
Washington, D.C. 20006
Telephone: 202-524-4140
Facsimile: 202-521-4141

Craig S. Denney
Snell & Wilmer L.L.P.
50 West Liberty Street, Suite 510
Reno, NV 89501
775-785-5440 (office)
775-785-5411 (direct)
775-785-5441 (fax)
*cdenney@swlaw.com*
(NV Bar No. 6953)

Serial No. 51-2016

מספר סידורי  51-2016

**AUTHENTICATION OF SIGNATURE**

**אימות חתימה**

I the undersigned, Seagull Cohen, Adv.& Notary, at 11 Tuval st. Ramat Gan, 52522 hereby certify that on February 9th 2016 there appeared before me at my office Mr. OHAD TZKHORI whose identity was proved to me by Passport no. 20733620 issued by Authority-I.C. at TEL-AVIV-YAFO on Feb 11th 2013 And signed of his own free will the attached document marked A1-A43.

אני החתומה מטה סיגל כהן, עו"ד נוטריונית, מתובל 11, רמת גן, 52522, מאשרת כי ביום 9/2/2016 ניצב לפני במשרדי מר אוהד צחורי שזהותו הוכחה לי על פי דרכון מספר 20733620 שהוצא על ידי סמכות ממונה דרכונים בתל אביב-יפו ביום 11/2/2013 וחתם מרצונו החופשי על המסמך המצורף והמסומן באות א1-א43.

In witness whereof I hereby authenticate the signature of Mr. OHAD TZKHORI by my own signature and seal today February 9th 2016.

ולראיה הנני מאמתת את חתימתו של מר אוהד צחורי בחתימת ידי ובחותמי, היום 9/2/2016.

Fees paid: 194 NIS including VAT.

שכרי בסך 194 ש"ח כולל מע"מ שולם.





חתימת הנוטריון
Signature

חותם הנוטריון
Notary's Seal

מסמך זה הופק במשרד עו"ד ונוטריון סיגל כהן, משרד רחוב תובל 11, רמת גן
טל' 6138555-03 פקס 6138550-03



# APOSTILLE
(Convention de la Haye du 5 Octobre 1961)

1. STATE OF ISRAEL

This public document

2. Has been signed by

Advocate _Sela..._

3. Acting in capacity of Notary

4. bears the seal/stamp of

the above Notary

## Certified

5. At the District Court of Tel Aviv Jaffa

6. Date _____

7. By an official appointed by

Minister of Justice under the

Notaries Law, 1976.

8. Serial number _____

9. Seal/Stamp

10. Signature

1. מדינת ישראל

מסמך ציבורי זה

2. נחתם בידי

עו״ד _____

3. המכהן בתור נוטריון.

4. נושא את החותם/החותמת

של הנוטריון הנ״ל

## אושר

5. בבית משפט המחוזי בתל אביב יפו

6. ביום

7. על ידי מי שמונה בידי שר

המשפטים לפי חוק הנוטריונים

התשל״ז - 1976

8. מס׳ סידורי

9. החותם / החותמת

10. חתימה

A₃₈ - ℠₃₈

**DEFENDANTS**

_____

**DEFENDANT Oren Shabat Laurent**
**By: Oren Shabat Laurent**
**31 Sasha Argov St.**
**Tel Aviv, Israel**

I hereby confirm that on 9 | 2 | 2016 [date], Mr. Oren Shabat Laurent, has

appeared before me and is known to me; affirmed his signature on this Consent Order; and has

signed it before me in my presence.                    Ohad Tzkhori, Advocate
                                                        License No. 46498

                              Ohad Tzhori
                              ADVOCATE
                              38 Tuval St., Ramat Gan Israel

_____

**DEFENDANT Banc de Binary, Ltd.**
**By: Oren Shabat Laurent, Shareholder of**
**Defendant Banc de Binary Ltd.**
**Kanika International Business Centre,**
**Office 401, Profiti Ilias 4, Germasogeia**
**4046, Limassol, Cyprus**

I, _____, am a licensed lawyer in

_____, with the title of _____ at [company,

firm]. I hereby affirm that Banc de Binary, Ltd.'s decision to execute and enter into this Consent

38

Serial No. 49-2016

מספר סידורי 49-2016

### AUTHENTICATION OF SIGNATURE

אימות חתימה

I the undersigned, Seagull Cohen, Adv.& Notary, at 11 Tuval st. Ramat Gan, 52522 hereby certify that on February 9th 2016 there appeared before me at my office Mr. OHAD TZKHORI whose identity was proved to me by Passport no. 20733620 issued by Authority-I.C. at TEL-AVIV-YAFO on Feb 11th 2013 And signed of his own free will the attached document marked A1-A43.

אני החתומה מטה סיגל כהן, עו"ד נוטריונית, מתובל 11, רמת גן, 52522, מאשרת כי ביום 9/2/2016 ניצב לפני במשרדי מר אוהד צחורי שזהותו הוכחה לי על פי דרכון מספר 20733620 שהוצא על ידי סמכות ממונה דרכונים בתל אביב-יפו ביום 11/2/2013 וחתם מרצונו החופשי על המסמך המצורף והמסומן באות א1-א43.

In witness whereof I hereby authenticate the signature of Mr. OHAD TZKHORI by my own signature and seal today <u>February 9th 2016</u>.

ולראיה הנני מאמתת את חתימתו של מר אוהד צחורי בחתימת ידי ובחותמי, היום <u>9/2/2016</u>.

Fees paid: 194 NIS including VAT.

שכרי בסך 194 ש"ח כולל מע"מ שולם.





חתימת הנוטריון
Signature

חותם הנוטריון
Notary's Seal

מסמך זה הופק במשרד סיגל כהן, משרד עו"ד ונוטריון רחוב תובל 11, ר...
טל׳ 03-6138555 פקס 03-6138550

אושרת חביב
OSHRA HAVIV

1 0 -02- 2016

בית משפט מחוזי ת״א
DISTRICT COURT OF TEL-AVIV

# APOSTILLE

(Convention de la Haye du 5 Octobre 1961)

אושרת חביב
OSHRA HAVIV

1 0 -02- 2016

בית משפט מחוזי ת״א
DISTRICT COURT OF TEL-AVIV

## 1. STATE OF ISRAEL

מדינת ישראל

This public document

מסמך ציבורי זה

2. Has been signed by

2. נחתם בידי

Advocate _Seagel Cohen_

עו״ד ס׳ יס׳

3. Acting in capacity of Notary

3. המכהן בתור נוטריון.

4. bears the seal/stamp of

4. נושא את החותם/החותמת

the above Notary

של הנוטריון הנ״ל

### Certified

אושר

5. At the District Court of Tel Aviv Jaffa

5. בבית משפט המחוזי בתל אביב יפו

6. Date _____ 1 0 -02- 2016

6. ביום _____

7. By an official appointed by

7. על ידי מי שמונה בידי שר

Minister of Justice under the

המשפטים לפי חוק הנוטריונים,

Notaries Law, 1976.

התשל״ו - 1976

8. Serial number _____

8. מס׳ סידורי _____

9. Seal/Stamp _____

9. חותם/חותמת _____

10. Signature _____

10. חתימה _____

A40 - 1440

**DEFENDANT ET Binary Options, Ltd.**
**By: Oren Shabat Laurent, Director and**
**Shareholder of Defendant ET Binary**
**Options, Ltd.**
**38 Tuval St., Ramat Gan, Israel**

I, Ohad Tzkhori, _____, am a licensed lawyer in

ISRAEL _____, with the title of Advocate _____ at [company,

firm]. I hereby affirm that ET Binary Options, Ltd.'s decision to execute and enter into this

Consent Order has been made in accordance with the law and pursuant to all the relevant

corporate documents and the relevant Companies laws. I further affirm that Oren Shabat Laurent

has been lawfully appointed to sign this Consent Order on behalf of ET Binary Options, Ltd.,

and I affirm that his signing on this Consent Order is with the authorization of ET Binary

Options, Ltd.'s Board of Directors, according to the resolution of the ET Binary Options, Ltd.'s

Board of Directors in its meeting on 17 1 2016 _____ [date] to approve the Consent

Order and to authorize Mr. Oren Shabat Laurent to sign it on its behalf, and is therefore legally

binding. I hereby confirm that on 2 2016 _____ [date], Mr. Oren Shabat Laurent, has

appeared before me and is known to me; affirmed his signature on this Consent Order; and has

signed it before me in my presence.

[Signature] _____

[Name] Ohad Tzkhori _____

[Title] Advocate _____

[Address] 38 Tuval St. Rm. ISRAEL _____

_____

_____

40

Serial No. 50-2016

מספר סידורי 2016-50

### AUTHENTICATION OF SIGNATURE

## אימות חתימה

I the undersigned, Seagull Cohen, Adv.& Notary, at 11 Tuval st. Ramat Gan, 52522 hereby certify that on February 9th 2016 there appeared before me at my office Mr. OHAD TZKHORI whose identity was proved to me by Passport no. 20733620 issued by Authority-I.C. at TEL-AVIV-YAFO on Feb 11th 2013 And signed of his own free will the attached document marked A1-A43.

In witness whereof I hereby authenticate the signature of Mr. OHAD TZKHORI by my own signature and seal today February 9th 2016.

Fees paid: 194 NIS including VAT.

אני החתומה מטה סיגל כהן, עו״ד נוטריונית, מתובל 11, רמת גן, 52522, מאשרת כי ביום 9/2/2016 ניצב לפני במשרדי מר אוהד צחורי שזהותו הוכחה לי על פי דרכון מספר 20733620 שהוצא על ידי סמכות ממונה דרכונים בתל אביב-יפו ביום 11/2/2013 וחתם מרצונו החופשי על המסמך המצורף והמסומן באות 43א-1א.

ולראיה הנני מאמתת את חתימתו של מר אוהד צחורי בחתימת ידי ובחותמי, היום 9/2/2016.

שכרי בסך 194 ש״ח כולל מע״מ שולם.



Signature

חותם הנוטריון
Notary's Seal

מסמך זה הופק במשרד סיגל כהן, משרד עו״ד ונוטריון רחוב תובל 11, רמת גן
טל׳ 03-6138555 פקס 03-6138550



# APOSTILLE

(Convention de la Haye du 5 Octobre 1961)

| 1. STATE OF ISRAEL | מדינת ישראל |
| --- | --- |
| This public document | מסמך ציבורי זה |
| 2. Has been signed by | 2. נחתם בידי |
| Advocate | עריך |
| 3. Acting in capacity of Notary | 3. המכהן בתור נוטריון. |
| 4. bears the seal/stamp of | 4. נושא את החותם/החותמת |
| the above Notary | של הנוטריון הנ"ל |

## Certified — אושר

| 5. At the District Court of Tel Aviv Jaffa | 5. בבית משפט המחוזי בתל אביב יפו |
| 6. Date _____ | 6. ביום |
| 7. By an official appointed by | 7. על ידי מי שמונה בידי שר |
| Minister of Justice under the | המשפטים לפי חוק הנוטריונים, |
| Notaries Law, 1976. | תשל"ו 1976 |
| 8. Serial number 2637916 | 8. מס' סידורי |
| 9. Seal/Stamp | 9. החותם / החותמת |
| 10. Signature | 10. חתימה |

1 0 -02- 2016

DEFENDANT BO Systems Ltd.,
By: Banc De Binary Limited, Seychelles
Registration No. 102922 (formerly named
and registered as BO Systems, Ltd.,
Seychelles Registration No. 102922), 106
Premier Building, Victoria, Meha,
Seychelles
By: Oren Shabat Laurent
Ultimate Beneficiary Shareholder of Banc
De Binary Limited, Seychelles
Registration No. 102922 (formerly named
and registered as BO Systems, Ltd.,
Seychelles Registration No. 102922), 31
Sasha Argov St., Tel Aviv, Israel

I, Ohad Tzklari_____, am a licensed lawyer in
ISRAEL_____, with the title of Advocate_____ at [company,
firm]. I hereby affirm that the decision of BO Systems, Ltd. Seychelles (now named and
registered as Banc De Binary Limited, Seychelles) to execute and enter into this Consent Order
has been made in accordance with the law and pursuant to all the relevant corporate documents
and the relevant Companies laws. I further affirm that BO Systems, Ltd. in Seychelles, by
resolution of its Board of Directors ("BOD"), changed its name to Banc De Binary Limited,
Seychelles. I affirm that, despite the name change, Banc De Binary Limited, Seychelles is the
one and the same company as Defendant BO Systems, Ltd., Seychelles, and maintains the same
company Registration No. of 102922. I further affirm that Oren Shabat Laurent has been
lawfully appointed to sign this Consent Order on behalf of BO Systems Ltd. Seychelles (now
named and registered as Banc De Binary Limited, Seychelles), according to the resolution of the
BOD in its meeting on 7/1/2016 to approve the Consent Order and to authorize Mr. Oren
Shabat Laurent to sign it on its behalf, and is therefore legally binding. I hereby confirm that on
9/2/2016_____ [date], Mr. Oren Shabat Laurent, has appeared before me and is known
to me; affirmed his signature on this Consent Order; and has signed it before me in my presence.

41

$A_{42} = N_{42}$

Ohad Tzkhori, Advocate
License No. 46498

[Signature] _____

[Name] Ohad Tzkhori

[Title] Advocate

[Address] 38 twol st. Or ISRAEL

_____

_____

42



_Sancil_

**DEFENDANT BdB Services, Ltd.**
**By: Sandrine Marie Claudia Rassool, Sole**
**Director and Shareholder of Defendant**
**BdB Services, Ltd.**
**106 Premier Building, Victoria, Meha,**
**Seychelles**

I, _ANDRÉ C C LABLACHE_, am a licensed lawyer in

_SEYCHELLES_, with the title of _ATTORNEY / NOTARY_ at [company, _TANNET LABLACHE_ _PADWANA_

firm]. I hereby affirm that BdB Services, Ltd.'s decision to execute and enter into this Consent

Order has been made in accordance with the law and pursuant to all the relevant corporate

documents and the relevant Companies laws.  I further affirm that Sandrine Marie Claudia

Rassool has been lawfully appointed to sign this Consent Order on behalf of BdB Services, Ltd.,

and I affirm that her signing on this Consent is with the authorization of BdB Services, Ltd.'s

Board of Directors, according to the resolution of the BdB Services, Ltd.'s Board of Directors in

its meeting on _19 January 2016_ [date] to approve the Consent Order and to authorize

Ms. Sandrine Marie Claudia Rassool to sign it on its behalf, and is therefore legally binding. I

hereby confirm that on _11 February 2016_ [date], Ms. Sandrine Marie Claudia Rassool,

has appeared before me and is known to me; affirmed her signature on this Consent Order; and

has signed it before me in my presence.

[Signature] _____

[Name] _ANDRE C C LABLACHE_

[Title] _____

[Address] _____

_____

_____

43

## APOSTILLE

### (Convention de la Haye du 5 Octobre1961)

1. **Country:**     **REPUBLIC OF SEYCHELLES**

   **This public document**

2. **has been signed by**      **ANDRE C.C. LABLACHE**

3. **acting in the capacity of NOTARY PUBLIC**

4. **bears the seal/stamp of** ANDRE C.C. LABLACHE

   NOTARY PUBLIC

### Certified

5. **at    VICTORIA    6.  11**TH **FEBRUARY  2016**

7. **by  J. ESTICOT,  REGISTRAR, SUPREME COURT**

8. **No.  3735  OF 2016**

9. **Seal/Stamp             10.  Signature**

**DEFENDANTS**

_____

**DEFENDANT Oren Shabat Laurent**
**By: Oren Shabat Laurent**
**31 Sasha Argov St.**
**Tel Aviv, Israel**

I hereby confirm that on _____ [date], Mr. Oren Shabat Laurent, has

appeared before me and is known to me; affirmed his signature on this Consent Order; and has

signed it before me in my presence.

_____

Ohad Tzhori
ADVOCATE
38 Tuval St., Ramat Gan Israel

_____

**DEFENDANT Banc de Binary, Ltd.**
**By: Oren Shabat Laurent, Shareholder of**
**Defendant Banc de Binary Ltd.**
**Kanika International Business Centre,**
**Office 401, Profiti Ilias 4, Germasogeia**
**4046, Limassol, Cyprus**

I, _Evita Lamprou_____, am a licensed lawyer in

_Cyprus_____, with the title of _Associate Lawyer_ at [company, _Joseph Flourentzos &_
_Associates LLC_

firm]. I hereby affirm that Banc de Binary, Ltd.'s decision to execute and enter into this Consent

38

Order has been made in accordance with the law and pursuant to all the relevant corporate documents and the relevant Companies laws.  I further affirm that Oren Shabat Laurent has been lawfully appointed to sign this Consent Order on behalf of Banc de Binary, Ltd., and I affirm that his signing on this Consent Order is with the authorization of Banc de Binary, Ltd.'s Board of Directors, according to the resolution of the Banc de Binary, Ltd. Board of Directors in its meeting on __11 DEC. 2015__ [date] to approve the Consent Order and to authorize Mr. Oren Shabat Laurent to sign it on its behalf, and is therefore legally binding. I hereby confirm that on __30 FEB. 2016__ [date], Mr. Oren Shabat Laurent, has appeared before me and is known to me; affirmed his signature on this Consent Order; and has signed it before me in my presence.

[Signature] _E. Lambrou_

[Name] _Evita Lambrou_

[Title] _Associate Lawyer_

[Address] _Spyridonos Lambrou 30_

_3106   Limassol_

_Cyprus_

**Signed in Limassol Cyprus**

Signed (or sealed) this day in my presence (Shabat)
_Evita Lambrou_

As the Certifying Officer, I certify only the signature which appears on document and assume no responsibility for the content of this document. In testimony whereof I have hereto set my hand and Official seal this 10 Day of February, 20 16
(L.S.)   € 5.00

PANAGIOTIS ALEXANDROU
Certifying Officer

39



This is to certify that the signature P. ALEXANDROU
appearing above is the signature of P. ALEXANDROU
a Certifying Officer of Limassol, appointed by the Minister
of the Interior of the Republic of Cyprus, under the Certifying
officers Law, 165(1) 2012, to certify signatures and seals and
that the seal opposite the said signature is that of the
Certifying Officer of Limassol. The District Officer certifies
only the signature and the seal of the Certifying Officer and
assumes no responsibility for the content of this document.
LIMASSOL - CYPRUS

Date __ 1 1 FEB 2016                                    District Officer

O. Stylianou

| APOSTILLE |
| --- |
| (Convention de La Haye du 5 Octobre 1961) |

1. Country CYPRUS
   This is public document

2. has been signed by ..................................... O. Stylianou .....................................

3. acting in the capacity of District Officer

4. bears the seal / stamp of the District Officer

                                    Certified

5. at Limassol    **Despo Xenofontos**    6. the .......... 1 1 FEB 2016 ..........

7. by ........................................................

8. No LM ........................................................ 12478\16

9. Seal / Stamp:                       10. Signatures:

.....................                                 ...............................
                                                    Permanent Secretary
                           Ministry of Justice and Public Order